IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DEAN HOHL,               )<br>                                     )<br>     Plaintiff,                   )<br>                                     )<br>v.                                  )<br>                                     )<br>BLACK DIAMOND FRANCHISING, )<br>INC.,                              )<br>                                     )<br>     Defendant.                )  | NO. 3:24-cv-00911<br><br>JUDGE CAMPBELL<br>MAGISTRATE JUDGE<br>FRENSLEY |

## MEMORANDUM

Pending before the Court is Defendant Black Diamond Franchising, Inc.'s ("Black Diamond") Motion to Dismiss. (Doc. No. 8). Plaintiff Dean Hohl ("Hohl") filed a response in opposition (Doc. No. 9), and Black Diamond filed a reply (Doc. No. 10). For the reasons discussed below, Black Diamond's motion (Doc. No. 8) is **GRANTED**. Hohl also filed a motion for leave to file a surreply (Doc. No. 11). The motion for leave to file a surreply is **GRANTED**.

### I. FACTUAL BACKGROUND

Black Diamond sells pest control franchises to franchisees in Indiana, Kentucky, Ohio, Texas, Florida, South Carolina, and Tennessee. (Doc. No. 1-1 ¶ 2). Hohl purchased a Black Diamond franchise for Davidson County, Tennessee and had plans to develop territories in Sumner, Robertson, Montgomery, Wilson, Williamson, Rutherford, and Cheatham counties. (*Id.* ¶ 3). In March 2017, the parties entered into a franchise agreement (the "Agreement"). (*Id.* ¶ 4). Pursuant to § 12.2 of the Agreement, Black Diamond is authorized to terminate the Agreement in certain circumstances with notice for which no opportunity to cure is required. (*Id.* ¶ 9). Two such conditions are if the franchisee "cease[s] to operate or otherwise abandon[s] the Franchise for a period of three consecutive days" or is "denied any federal, state, or local license needed to

operate." (*Id.* ¶ 9). Hohl asserts that after he successfully developed a profitable business at his expense in Sumner, Robertson, Montgomery, Wilson, Williamson, Rutherford, and Cheatham counties, Black Diamond took Williamson and Rutherford counties from Hohl and turned them into corporate franchises. (*Id.* ¶¶ 10-11). Hohl contends that as a result, he elected not to renew the franchise with Black Diamond and planned to find a buyer to whom he could transfer the franchise. (*Id.* ¶ 15). Hohl alleges that he emailed Black Diamond on January 12, 2024, gave notice of his intent not to renew, and asked Black Diamond to cease all search engine optimization and online marketing activities on Hohl's behalf. (*Id.*¶¶ 15-16). Hohl also alleges that on January 17, 2023, he emailed Black Diamond stating that he would be removing certain vehicles from the franchise's service but continued to have branded vehicles in service at all times. (*Id.* ¶17).

Hohl contends that Black Diamond sent him a termination letter dated January 22, 2024, that included the following allegations: (1) Hohl was in default for allegedly abandoning the franchise during the last three months of the franchisee's term; (2) Black Diamond made a series of requests regarding training, uniforms, licensing, insurance coverage, and other requirements under the Agreement that Hohl failed to respond to or responded to evasively; (3) Hohl had not provided evidence that his franchise had obtained the necessary licenses for pest and animal control or that it was OSHA compliant, had worker's compensation insurance, or a valid business license; (4) Hohl's request for Black Diamond to stop search engine optimization marketing, his stated intention not to renew, and his intention to reduce his fleet size constituted an intent to abandon the franchise during the last three months of the term; (5) Hohl had communicated to customers that he was no longer able to service customer accounts due to circumstances beyond his control and that Hohl had contacted other franchisees presumably to discuss their contracts with Black Diamond. (*Id.* ¶¶ 20-21,23,25,27,29,31). Hohl contends that each of the allegations in the

2

termination letter are baseless. (*Id.* ¶ 24, 26, 28, 30, 32). Hohl asserts that Black Diamond terminated the Agreement pursuant to Section 12.2 and demanded that Hohl immediately cease operations with Black Diamond. (*Id.* ¶ 33). Hohl also asserts that Black Diamond knowingly and intentionally trained him and other franchisees incorrectly on termite remediation in violation of state standards and safe industry practices and that if Black Diamond had revealed that termite remediation could not be done profitably using the correct, state-mandated amount of chemicals, Hohl would never have purchased the franchise. (*Id.* ¶¶ 45-46).

Hohl brings claims against Black Diamond for Breach of Contract, Breach of the Tennessee Consumer Protection Act ("TCPA"), Fraud in the Inducement, and Conversion. Black Diamond moved for dismissal under Fed. R. Civ. P. 12(b)(1) and (6) on the grounds that Hohl's claims are subject to an arbitration agreement between the parties. (Doc. No. 8).

## II. STANDARD OF REVIEW

Black Diamond seeks dismissal of Hohl's claims in favor of arbitration pursuant to the Federal Arbitration Act ("FAA"), specifically, 9 U.S.C. § 2. Section 2 provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA "expresses a strong public policy favoring arbitration of a wide class of disputes." *Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 376 (6th Cir. 2005) (quoting *Cooper v. MRM Invest. Co.*, 367 F.3d 493, 498 (6th Cir. 2004)). The Court considers the validity of the agreement to arbitrate separate from the validity of the contract as a whole. *See Arnold v. Arnold Corp-Printed Comm. for Business*, 920 F.2d 1269, 1277-78 (6th Cir. 1990) (citing *Prima Paint v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967)) (stating that arbitration clauses as a matter of federal law are "separable" from the contracts in which they are imbedded). While a general challenge to the enforceability of

3

the contract as a whole must be decided by the arbitrator, a specific challenge to the arbitration agreement itself must be decided by the court before it compels arbitration. *See Anderson v. Charter Comm., Inc.*, 2021 WL 2396231, at *2 (6th Cir. Jun. 11, 2021) (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444-45 (2006)).

The Supreme Court has recognized that "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67–68, 139 S. Ct. 524, 529, 202 L. Ed. 2d 480 (2019) (internal citations omitted). Moreover, "when parties have agreed to arbitrate 'arbitrability,' a court may not disregard their agreement—even if a particular argument for arbitration seems to be 'wholly groundless.'" *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 844 (6th Cir. 2020) (internal citation omitted). Typically, Courts turn to state law to interpret arbitration agreements. *Samaan v. Gen. Dynamics Land Sys., Inc.*, 835 F.3d 593, 601 (6th Cir. 2016) (internal citations omitted) ("'[T]he interpretation of an arbitration agreement is generally a matter of state law.' Accordingly, we 'apply[ ] general state-law principles of contract interpretation to the interpretation of an arbitration agreement.'"). However, when considering questions of "arbitrability", the Supreme Court has held that "there must be 'clear and unmistakable evidence' that the parties agreed to have an arbitrator decide such issues." *Blanton*, 962 F.3d at 844. "In effect, this rule reverses the usual presumption in favor of arbitration when it comes to questions of 'arbitrability.'" *Blanton*, 962 F.3d at 844.

## III. ANALYSIS

### A. Arbitration Provision

Black Diamond moved to dismiss Hohl's claims in favor of arbitration based on § 22.2 of the Agreement, which provides as follows:

> **22.2** **Arbitration**
>
> (a) All controversies, disputes, or claims (excluding claims relating to (i) ownership or use of the Marks, (ii) issues concerning alleged violations of federal or state antitrust laws; (iii) securing injunctive relief pursuant to Section 22.5 of this Agreement) between the parties, including their respective affiliates, owners, officers, directors, agents, and employees, arising from or relating to this Agreement shall on demand of either party be submitted for arbitration to the American Arbitration Association ("AAA"). The arbitration shall be governed exclusively by the United States Arbitration Act (9 U.S.C. § 1, et seq), without reference to any state arbitration statutes. The parties agree that, in connection with any such arbitration proceeding, each shall submit or file any claim which would constitute a compulsory counterclaim (as defined by Rule 13 of the Federal Rules of Civil Procedures) within the same proceeding as the claim to which it relates. Any such claim which is not submitted or filed in such proceeding shall be barred. The arbitration proceedings shall be conducted in the city where Franchisor then has its principal place of business in accordance with the then-current commercial arbitration rules of the AAA, except the parties shall be entitled to limited discovery at the discretion of the arbitrator(s) who may, but are not required to, allow depositions. The parties acknowledge that the arbitrators' subpoena power is not subject to geographic limitations. The arbitration proceedings shall be conducted on an individual basis and not on a multi-plaintiff, consolidated or class-wide basis. The arbitrator(s) shell have the right to award the relief which he or she deems proper, consistent with the terms of this Agreement, including compensatory damages (with interest on unpaid amounts from date due), legal fees and costs. The award and decision of the arbitrator(s) shall be conclusive and binding on all parties, and judgment upon the award may be entered in any court of competent jurisdiction. Any right to contest the validity or enforceability of the award shall be governed exclusively by the United States Arbitration Act.

(Doc. No. 1-1 at PageID # 74). In response, Hohl argues that dismissal is improper because pursuant to the TCPA, any agreement that restricts jurisdiction or venue to a forum outside Tennessee is void as a matter of public policy. Specifically, Hohl cites to Tenn. Code Ann. § 47-18-113(b), which provides as follows:

5

> Any provision in any agreement or stipulation, verbal or written, restricting jurisdiction or venue to a forum outside this state or requiring the application of the laws of another state with respect to any claim arising under or relating to the Tennessee Consumer Protection Act of 1977 and related acts set forth in this title is void as a matter of public policy. Further, no action of a consumer or other person can alter, amend, obstruct or abolish the right of the attorney general and reporter to proceed to protect the state of Tennessee and consumers or other persons within this state or from other states who are victims of illegal practices of persons located, wholly or in part, in Tennessee's borders.

Tenn. Code Ann. § 47-18-113(b).

Hohl challenges the validity of the arbitration provision and argues that it is "void as a matter of public policy" and that the matter is for the Court to decide because "there is no express delegation of the issue of arbitrability regarding the arbitration provision." (Doc. No. 9 at PageID # 108). Hohl also argues that because the arbitration provision in the Agreement restricts the jurisdiction or venue to Jeffersonville, Indiana, which is outside the State of Tennessee, the arbitration provision is void as a matter of law.

However, Hohl's argument runs afoul of Sixth Circuit precedent. In *Blanton v. Domino's Pizza Franchising LLC*, the Sixth Circuit considered whether the parties provided "clear and unmistakable evidence" that they agreed to arbitrate the gateway question of arbitrability. 962 F.3d 842 (6th Cir. 2020). The arbitration agreement at issue in *Blanton* provided that "[t]he American Arbitration Association ('AAA') will administer the arbitration and the arbitration will be conducted in accordance with then-current [AAA Rules]." *Id.* at *844-45. The Court acknowledged that the AAA rules provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." Rule 7(a). The Court recognized that the AAA Rules empower an arbitrator to resolve issues of arbitrability, including questions about the "scope" of the arbitration agreement, and courts have relied on the incorporation of the AAA Rules to determine what parties have agreed to. The Court also noted

6

Case 3:24-cv-00911   Document 15   Filed 10/28/24   Page 6 of 8 PageID #: 199

that district courts in this Circuit and others have long recognized that the incorporation of AAA Rules in an arbitration agreement provides "clear and unmistakable evidence" that the parties agreed to arbitrate arbitrability. Accordingly, the Sixth Circuit held that when an arbitration agreement incorporates the AAA Rules, the parties have demonstrated their agreement to arbitrate questions of arbitrability. *Blanton* is not an outlier, but one of several decisions that reached the same conclusion. *Ciccio v. SmileDirectClub, LLC*, 2 F.4th 577, 583 (6th Cir. 2021) (citations omitted) ("The Supreme Court requires 'clear and unmistakable' evidence that the parties intended to delegate gateway questions to the arbitrator. Under our precedent, there is such evidence here because the parties incorporated the AAA rules into their Agreement."); *McGee v. Armstrong*, 941 F.3d 859, 866 (6th Cir. 2019); *Willacy v. Marotta*, 683 F. App'x 468, 477 (6th Cir. 2017); *Fruit Creations, LLC v. Edible Arrangements, LLC*, No. 3:20-CV-00479, 2020 WL 5095460, at *6 (M.D. Tenn. Aug. 27, 2020) (citation omitted); *Cornett v. Cmco Mortg., LLC*, Civ. No. 12-169-ART, 2012 WL 12925599, at *2 (E.D. Ky. Nov. 9, 2012); *Newsome v. Vehi-Ship, LLC*, No. 22-CV-10545, 2023 WL 2267163, at *2 (E.D. Mich. Feb. 28, 2023).

Such is the case here. Section 22.2 of the Agreement references the AAA rules. Accordingly, the Court finds that the Agreement's incorporation of the AAA Rules into the arbitration provision provides "clear and unmistakable" evidence that the parties intended and agreed to arbitrate gateway questions of "arbitrability."

**B.     Choice of Law Provision**

Hohl also contends that Black Diamond's motion to dismiss should be denied because the choice of law provision in the Agreement provides that Indiana law governs the Agreement. (Doc. No. 9 at PageID # 107). Hohl contends that the choice of law provision is void as a matter of law because "such contractual provisions cannot defeat the ability of Hohl to bring an action under the

7

Tennessee Consumer Protection Act at an appropriate forum within this state." (*Id.* at PageID # 110). Hohl again cites Tenn. Code Ann. § 47-18-113 in support of his position and argues that Hohl's TCPA claim automatically results in application of Tennessee law regardless of the forum.

The Court disagrees. Sixth Circuit law on this point is clear and recognizes that "the provision in the TCPA voiding 'any provision in any agreement or stipulation, verbal or written, restricting jurisdiction or venue to a forum outside this state or requiring the application of the laws of another state with respect to any claim arising under or relating to the Tennessee Consumer Protection Act' is preempted by the Federal Arbitration Act (FAA) to the extent it attempts to override the terms of otherwise valid private agreements to arbitrate." *Shaffer v. Interbank FX*, No. 3:12-CV-231, 2013 WL 53979, at *4 (E.D. Tenn. Jan. 3, 2013). This is because "the purpose of the FAA is "to ensure the enforceability, according to their terms, of private agreements to arbitrate." *Id.* (internal citation omitted). Accordingly, "courts… regularly transfer TCPA claims to other venues pursuant to forum selection clauses." *Shaffer*, 2013 WL 53979, at *4.

Accordingly, the Court finds that the choice of law provision in the Agreement is not void.

### IV. CONCLUSION

For the reasons stated above, Defendant motion to dismiss (Doc. No. 22) and Hohl's motion for leave to file a surreply (Doc. No. 11) will be **GRANTED**.

An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE